UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELENA PANKOVA-VISSER,

                                 **Plaintiff,**

                v.                                      1:20-CV-430
                                                           (FJS/DJS)
**WALMART INC., CVB INC., and
LUCID MATTRESS DBA,**

                                   **Defendants.**
_____

**APPEARANCES**                                         **OF COUNSEL**

**MALAMOOD LAW, P.C.**                       **LUKE S. MALAMOOD, ESQ.**
11 North Pearl Street, Suite 1501
Albany, New York 12207
Attorneys for Plaintiff

**LAW OFFICES OF JOHN WALLACE**        **INGRID A. EFFMAN, ESQ.**
1 Park Place, Suite 402
Albany, New York 12205
Attorneys for Defendants

**MONACO, COOPER, LAMME &**            **NORAH M. MURPHY, ESQ.**
**CARR, PLLC**
1881 Western Avenue, Suite 200
Albany, New York 12203
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff commenced this action by filing a *pro se* verified complaint on April 13, 2020. *See* Dkt. No. 1.[1] In her complaint, Plaintiff asserted that she purchased a Lucid Memory Foam mattress from Defendant Walmart on April 14, 2017. *See id.* at ¶ 11. Defendant CVB supplied the mattress to Defendant Walmart, and Defendant Lucid Mattress Company shipped the mattress to Plaintiff. *See id.* at ¶¶ 12-13.

Furthermore, Plaintiff alleged that she received the mattress on April 19, 2017, and that, while she was unpacking the compressed memory foam mattress, the mattress started to decompress while half-folded, which caused the mattress to rapidly unfold by a decompression force and to knock her down, thereby causing her injury. *See id.* at ¶¶ 14, 16. Plaintiff asserted that there was no warning on the mattress and packaging warning her of the danger inherent in unpacking the mattress, and she could not have discovered the danger of unpacking the mattress with the exercise of reasonable care and diligence, inspection or intuition and could not otherwise have averted the injury she sustained. *See id.* at ¶¶ 17-18.

Based on these allegations, Plaintiff asserted the following three negligence claims against both Defendants:[2] (1) negligent failure to warn of the product danger; (2) negligent failure to inspect the product packaging for safety; and (3) negligent failure to design safe packaging. *See generally* Dkt. No. 1.

---

[1] Prior to the Rule 16 conference with Magistrate Judge Stewart, Plaintiff retained Luke S. Malamood, Esq., her current counsel, to represent her.

[2] Although Plaintiff's complaint appears to list three Defendants, there is no dispute that CVB Inc. and Lucid Mattress are a single entity – CVB Inc. d/b/a Lucid Mattress ("Defendant CVB").

Pending before the Court is Defendants' motion for summary judgment, *see* Dkt. No. 40, which Plaintiff opposes, *see* Dkt. Nos. 43-45.

## II. DISCUSSION

A.    **Failure to comply with this District's Local Rules of Civil Procedure**

Rule 7.1(b)(3) of the Local Rules of Civil Procedure ("Local Rules") provides that "[a]ny motion for summary judgment shall include a Statement of Material Facts, ***and any opposition shall contain a response to the Statement of Material Facts.*** *See* L.R. 56.1." L.R. 7.1(b)(3) (italics added).

Rule 56.1 of the Local Rules provides, in pertinent part, as follows:

> (a) **Statement of Material Facts**: Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. . . .
>
> (b) **Response to Statement of Material Facts**: *The opposing party shall file a separate Response to the Statement of Material Facts*. The opposing party's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. **The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert**. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

L.R. 56.1 (italics added).

In contravention of Local Rules 7.1(b)(3) and 56.1, Plaintiff did not file a response to Defendants' Statement of Material Facts. Therefore, the Court deems admitted the facts that Defendants set forth in their Statement of Material Facts, all of which are properly supported.

**B.     Factual Background[3]**

Plaintiff ordered the mattress, which allegedly caused her injuries, on line from Defendant Walmart on April 14, 2017. *See* Defendants' Statement of Material Facts at ¶ 2 (citing Wilson Aff. ¶ 7; Wilson Ex. A; Murphy Aff. Ex. 4 page 2). Defendant Walmart was the online retailer of the mattress, and Defendant CVB was the importer and distributor of the mattress. *See id.* at ¶¶ 3-4 (citing Wilson Aff. ¶ 6; Wilson Ex. A; Murphy Aff. Ex. 4 page 2). Healthcare Co., Ltd., Ding Yan, RuGao Town, Jiansu Province, China designed and manufactured the mattress. *See id.* at ¶ 5 (citing Wilson Aff. ¶ 4; Murphy Aff. Ex. 4 page 4). Neither Defendant Walmart nor Defendant CVB designed or manufactured the mattress or the packaging. *See id.* at ¶¶ 6-7 (citing Wilson Aff. ¶ 4; Murphy Aff. Ex. 4 page 4). Defendant CVB shipped the mattress directly to Plaintiff's home address on April 17, 2017. *See id.* at ¶ 8 (citing Wilson Aff. ¶ 8; Wilson Aff. Ex. B). Defendant Walmart never had possession of the mattress at any time between the online order and delivery to Plaintiff. *See id.* at ¶ 9 (citing Wilson Aff. ¶ 11). The mattress is fully compressed, wrapped and boxed by the manufacturer and is delivered to Defendant CVB by the manufacturer in its compressed form, wrapped in plastic, and in a sealed box. *See id.* at ¶ 10 (citing Wilson Aff. ¶ 9). Defendant CVB then ships the same sealed boxed mattress to the consumer once the consumer orders it online from

---

[3] The facts in this section are taken from Defendants' Statement of Material Facts, to which, as noted, Plaintiff did not respond and which, therefore, the Court has deemed admitted as they are properly supported.

Defendant Walmart. *See id.* at ¶ 11 (citing Wilson Aff. ¶ 9). At no time does Defendant CVB unseal the box or its interior packaging between the time it is delivered by the manufacturer through when it is delivered to the consumer. *See id.* at ¶ 12 (citing Wilson Aff. ¶ 10). The box and packaging stays completely intact up to the time of delivery to the consumer, as it was when it left the manufacturer. *See id.* at ¶ 13 (citing Wilson Aff. ¶ 10). Inside the boxed mattress are two paper sheets containing instructions, warnings and warranty information. *See id.* at ¶ 14 (citing Wilson Aff. ¶ 12; Wilson Aff. Ex. C; Murphy Aff. Ex. 4 pages 5-6). The Lucid Mattress at www.lucidmattress.com also contains instructions, warnings, and warranty information for the mattress. *See id.* at ¶ 15 (citing Wilson Aff. ¶ 13; Wilson Aff. Ex. D; Murphy Aff. Ex. 4 page 7).

      The manufacturer is known to Defendant CVB as a reputable manufacturer of boxed mattresses who uses reasonable and safe design and manufacturing processes. *See id.* at ¶ 16 (citing Wilson Aff. at ¶ 14-17). As of 2017, Defendant CVB had distributed 225,000 mattresses from this manufacturer and had never received a complaint that the mattress rapidly decompressed during opening as Plaintiff alleges. *See id.* at ¶ 17 (citing Wilson Aff. ¶ 15). Defendant CVB has never received a report of any consumer of the mattresses distributed ever causing an injury to a consumer from a mattress rapidly decompressing during opening as Plaintiff alleges. *See id.* (citing Wilson Aff. ¶ 16). Defendant CVB has never received a report or complaint that the instructions or warning information contained on the information sheets or on the box itself were deficient in any manner. *See id.* at ¶ 19 (citing Wilson Aff. ¶ 17)). The risk that a boxed mattress could rapidly decompress or "explode" during opening was not a risk known or foreseen by Defendant CVB at any time prior to Plaintiff's alleged incident. *See id.* at ¶ 20 (citing Wilson Aff. ¶ 13 and 15-16). To Defendant CVB's knowledge, the information, instructions and warnings concerning the mattress were in conformity with the available

knowledge of the scientific and industrial community and met all applicable government standards. *See id.* at ¶ 21 (citing Wilson Aff. ¶ 20).

Plaintiff has no witness or engineering expert who would opine at trial that the design of the mattress or packaging was deficient in any manner, violated an acceptable design or engineering standard or was not reasonably safe, *see id.* at ¶ 22 (citing Ex. 3, 4, and 6), that inspection of the mattress or packaging by Defendants was deficient in any manner, violated any acceptable industry practice or standard or was not reasonably safe, *see id.* at ¶ 23 (citing Ex. 3, 4, and 6), and/or that the instructions/warnings accompanying the mattress were deficient in any manner, violated any acceptable industry practice or standard and were not reasonably safe, *see id.* at ¶ 24. Furthermore, Plaintiff has no witness or human factors expert who would opine at trial that the instructions/warnings accompanying the mattress were deficient in any manner, violated any acceptable industry practice or standard and were not reasonably safe. *See id.* at ¶ 25 (citing Ex. 3, 4, and 6). Nor does Plaintiff have any witness or expert who would opine at trial that the risk of the mattress decompressing rapidly during unpackaging was a known risk in the industry and to Defendant CVB in particular. *See id.* at ¶ 26 (citing Ex. 3, 4, and 6).

Finally, Plaintiff reported to multiple providers following April 19, 2017, that her injury and pain resulted from a mammogram. *See id.* at ¶ 17 (second ¶ 17) (citing Ex. 9-19; Ex. 7 and 8). Plaintiff did not report to any of her multiple providers following April 19, 2017, that she had had an incident in which a mattress struck her and caused injury. *See id.* at ¶ 18 (second ¶ 18) (citing Ex. 9-19; Ex. 7 and 8).

C.     **First cause of action – failure to warn a consumer of danger**

The crux of this claim is Plaintiff's assertion that both Defendants had a duty to warn a consumer about the danger of a compressed mattress to explode if the plastic packaging were compromised before the mattress was fully unfolded and/or the danger of unpacking the mattress and that both Defendants negligently breached that duty.[4]

"'Although a retailer is not generally liable in negligence for the sale of a defective product, it is under a duty to inspect for and discover such defects "as a reasonable physical inspection would disclose."'" *Cruz v. Kumho Tire Co., Inc.*, Nos. 8:10-cv-219 (MAD/CFH), 8:12-cv-200 (MAD)/(CFH), 2015 WL 2193796, *19 (N.D.N.Y. May 11, 2015) (quoting *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 844 (E.D.N.Y. 1995) (quoting *Naples v. City of New York*, 34 A.D.2d 577, 578 (2d Dep't 1970))). "'[W]hen a vendor buys a product from a reputable source of supply, he has "reasonable grounds for believing the chattel to be free from

---

[4] In most cases, a plaintiff asserts a failure to warn claim against a manufacturer of a product. However, in this case, neither Defendant manufactured or designed either the mattress or its packaging.  Although Plaintiff avers in her affidavit that Defendant Lucid is the manufacturer, *see* Dkt. No. 45, Affidavit of Plaintiff in Opposition to Motion for Summary Judgment at ¶ 3, Exhibit "A" to which she cites as the basis for that statement clearly contradicts that assertion:

> "MADE FOR CVB INC 1525 W 2960 S, LOGAN, UT 84321"
> "MADE IN CHINA"
>
> **Manufactured by:**
> Healthcare Co., Ltd
> Ding Yan, RuGao Town
> JianSu Province
> China
>
> Date of Manufacture 01/2017

*See* Dkt. No. 45-1, Exhibit "A" at 2.

defects."'"  *Id.* (quoting [*Gonzalez*, 881 F. Supp. at 844] (quoting *Outwater v. Miller*, 3 A.D.2d 670, 670 (2d Dep't 1957))).  Finally, "'[w]here a retailer has sold a dangerous product without providing an adequate warning of that danger, and that product has injured a user, the retailer may be liable to the user under a "failure to warn" theory of liability if the retailer knew or had reason to know that the product was dangerous, or was likely to be dangerous, when used.'"  *Id.* (quoting *Topliff v. Wal-Mart Stores East LP*, No. 6:04-CV-0297, 2007 WL 911891, *28 (N.D.N.Y. Mar. 22, 2007) (emphasis omitted)).

In *Topliff v. Wal-Mart Stores E. LP*, No. 6:04-CV-0297 (GHL), 2007 WL 911891 (N.D.N.Y. Mar. 22, 2007) (Lowe, MJ), the court explained that, "[a]s stated in Section 388 and 401 of the *Restatement (Second) of Torts*, where a retailer has sold a dangerous product without providing an adequate warning of that danger, and that product has injured a user, the retailer may be liable to the user under a 'failure to warn' theory of liability if the retailer ***knew or had reason to know*** that the product ***was dangerous***, ***or was likely to be dangerous***, when used."  *Id.* at *28 (footnote omitted).  "New York has traditionally followed these two sections of the Restatement (Second) of Torts."  *Id.* (footnote omitted).

The court explained further that the "had reason to know" standard is different from the "should have known" standard of knowledge.  Furthermore, "according to Sections 401 and 12 of the *Restatement (Second) of Torts*, whether someone 'had reason to know' of a danger is a type of knowledge or notice distinct from whether someone 'should have known' of the danger.  In short the term 'had reason to know' does not impose any duty to ascertain unknown facts, while the term 'should have known' does impose such a duty."  *Id.* (footnote omitted).  Thus, the court in *Topliff* concluded that, in applying the legal standard stated in Sections 388 and 401 of the *Restatement (Second) of Torts*, "two issues arise: (1) whether any evidence exists in the record

from which a reasonable fact-finder could conclude that the [mattress and/or plastic packaging surrounding the mattress] in question was 'dangerous' or 'likely to be dangerous' when used; and (2) whether any evidence exists in the record from which a reasonable fact-finder could conclude that, before the date of the accident (April 19, 2017), Defendant[s] 'knew or had reason to know' that the [mattress and/or the plastic packaging surrounding the mattress] in question was dangerous or likely to be dangerous when used." *Id.* at \*30.

Applying the *Topliff* test to the present case, the Court finds that there is no evidence in the record from which a reasonable fact-finder could conclude that the mattress and/or its plastic packaging was dangerous or likely to be dangerous; and, even if there were, there is no evidence in the record from which a reasonable fact-finder could conclude that, before the date of Plaintiff's alleged accident when opening the mattress, Defendants knew or had reason to know that the mattress and/or its plastic packaging was dangerous or likely to be dangerous when used. Defendant Walmart never had possession of the mattress or its packaging (the outer box or the plastic packaging surrounding the mattress that was in the box); therefore, Defendant Walmart clearly did not know nor did it have reason to know that the mattress and/or its internal plastic packaging was dangerous or likely to be dangerous when used.

Moreover, there is nothing in the record from which a reasonable fact-finder could conclude that, before the date of Plaintiff's alleged accident when opening the mattress, Defendant CVB knew or could have known that the mattress and/or its internal plastic packaging was dangerous or likely to be dangerous when used. In fact, it is undisputed that, prior to its delivery of the mattress to Plaintiff, Defendant CVB had delivered 225,000 of these mattresses in the same packaging and had never received a complaint or claim of injury from any of the

consumers who had purchased this product.  Accordingly, for the above-stated reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's first cause of action.

**D.     Second cause of action – negligent failure to inspect the product packaging and/or negligent failure to test packaging**

"New York law imposes different duties upon manufacturers of a product and its retailers, particularly with respect to sealed packages." *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 7 (S.D.N.Y. 2020).  Although "[a] manufacturer may be liable for injuries sustained by a purchaser as a result of a manufacturing flaw, defective design, or lack of adequate warnings for the use of the product, . . . a retailer is only 'under a duty to inspect for and to discover such defects as a reasonable physical inspection would disclose.' . . ." *Id.* (internal quotations and citations omitted).  "If the retailer does not conduct such an inspection, it can be held liable for defects it could have discovered through an inspection when the product was in its possession." *Id.* (citing *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 523 (S.D.N.Y. 2003) (citing *Sideris v. Simon A. Rented Servs., Inc.*, 254 A.D.2d 408, 678 N.Y.S.2d 771, 772 (2d Dep't 1998))).  Finally, "[w]hen a product is sealed, a retailer does not have a duty to test the contents of the package for defects and, under a negligence theory of liability, 'cannot be held liable for injuries sustained from the contents of [the] sealed product even though a test might have disclosed a potential danger.'" *Id.* (quoting *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 422 (S.D.N.Y. 2011) (quoting *Brownstone v. Times Square Stage Lighting Co.*, 39 A.D.2d 892, 333 N.Y.S.2d 781, 782 (1st Dep't 1972))).

In this case, Defendant Walmart never had possession of the product or its plastic packaging so it had no way to inspect or test the packaging and had no duty to do so. Furthermore, prior to shipping the mattress to Plaintiff, Defendant CVB had received and

shipped to consumers more than 225,000 of these mattresses in their original packaging, which it did not open, to consumers and had never received a complaint from any consumer about either the inside plastic packaging or the mattresses. Defendant CVB had no duty to open the sealed outside packaging to test the contents of the package – the plastic surrounding the mattress and the mattress itself – and, thus, had no duty to inspect or test the inside plastic packaging or the mattress. Therefore, Defendant CVB cannot be held liable to Plaintiff for any injuries she sustained when she opened the box and started to remove the plastic wrapping around the mattress. Accordingly, for these reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's second cause of action.

E.   **Third cause of action – negligent design or manufacture of the mattress and/or its plastic packaging**

"'Under New York law, a plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently.'" *Delgado v. Universal Beauty Prods., Inc.*, No. 17-CV-3245 (GRB) (SIL), 2022 WL 4368326, *3 n.8 (E.D.N.Y. Sept. 21, 2022) (quoting *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 887, 887 (E.D.N.Y. 2018) (collecting cases)). "Further, it is well-settled that '[w]here liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent.'" *Id.* (quoting [*Oden*, 330 F. Supp. 3d at 887] (citation and quotation omitted)). "Design defect claims require that plaintiff 'establish: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) *the design was a substantial factor in causing the plaintiff's injury*.'" *Delgado*, 2022 WL 4368326, *3 n.8 (quoting *Coleson Janssen Pharmaceutical, Inc.*, 251 F.

Supp. 3d 716, 720 (S.D.N.Y. 2017) (test for design defect) (quotation and citation omitted) (emphasis added)).

As an initial matter, as noted above, neither Defendant manufactured or designed the mattress or the plastic packaging that surrounded the mattress. Furthermore, Defendant Walmart never possessed the mattress or its packaging because, once Defendant CVB received the mattress in its original packaging from the manufacturer, it shipped the mattress in its original packaging directly to Plaintiff. Finally, for the same reasons as noted with regard to Plaintiff's first cause of action, Defendant CVB had no duty to open the outer packaging, which Plaintiff does not claim was defective, to inspect the mattress and the plastic packaging that surrounded it. It is undisputed that the manufacturer/designer of both the mattress and its plastic packaging was, as far as Defendant CVB was aware, a reputable manufacturer; and Defendant CVB had received 225,000 of these mattresses and shipped them to consumers without incident and without complaints from any of those consumers about either the mattresses or the plastic packaging. Thus, Defendant CVB had reasonable grounds for believing that the mattress and the plastic packaging surrounding that mattress to be free from defects. *See Ponzeka v. Bayer Healthcare, LLC*, No. 18-cv-5759 (JMA) (ARL), 2021 WL 9918143, *3 (E.D.N.Y. 2021) (stating that "'[a] vendor who purchases products from a reputable source of supply has reasonable grounds for believing the products to be free from defects.'" (quoting *Krumpek v. Millfeld Trading Co.*, 709 N.Y.S.2d 265, 267 (N.Y. App. Div. 4th Dep't 2000))). Accordingly, for all these reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's third cause of action.

## III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 40, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED**

Dated: March 13, 2023
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge